IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT PEREZ, | : | CIVIL ACTION |
|         Plaintiff, | : | |
| | : | No. 14-5619 |
|     v. | : | |
| | : | |
| JOHN WETZEL et al., | : | |
|         Defendants. | : | |

MCHUGH, J.                                                                                                            MAY 19, 2015

### MEMORANDUM

Plaintiff Albert Perez, an inmate at SCI-Graterford, has brought this § 1983 action against a number of named and unnamed prison officials, several named and unnamed medical services providers, and the company contracted to provide healthcare services to the SCI-Graterford facility. Plaintiff alleges that he was subjected to excessive force in violation of the Eighth and Fourteenth Amendments when he was handcuffed with his hands behind his back during a cell search which resulted in injury to his shoulder. Plaintiff further asserts that he received improper medical treatment for this injury also in violation of the Eighth and Fourteenth Amendments. Certain named Defendants have moved for dismissal of this action for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I.     Factual Background**

Plaintiff avers that he was present in the J-Unit Recreational Area at SCI-Graterford on October 2, 2012. At 8:30 A.M., the rest of the capital inmates were removed from their cells and brought to the recreational area under the pretense of a fire drill. Members of the facility's Correctional Emergency Response Team (CERT) placed all the inmates in flexcuffs with their arms behind their backs. Plaintiff alleges that his cuffs were pulled too tightly. Plaintiff

1

informed members of the CERT that his flexcuffs were very tight and were cutting off his circulation, causing his fingers to swell and turn blue.  He was told that the message would be relayed to supervisors, but Plaintiff states that the CERT members never went inside to do so.  Furthermore, during that period, no supervisor came outside to check on the inmates.  Plaintiff claims that he was informed that Secretary of the State of Pennsylvania Department of Corrections John Wetzel, Superintendent of SCI-Graterford Mike Wenerowicz, Deputy Superintendent for Facilities Management Jay Lane, and Deputy Superintendent of Security George Ondrejka were all inside J-Unit at the time and were made aware of the situation outside.

Plaintiff later informed the CERT members that he suffers from chronic back pain and that the position the flexcuffs placed him in was aggravating that pain, as well as causing pain in his shoulder.  Plaintiff requested to be cuffed with his hands in front instead, but CERT members refused.  Plaintiff also claims to have been refused the opportunity to use the restroom which caused him to urinate on himself.

The inmates were kept in the flexcuffs behind their backs until 12:00 P.M., almost three and a half hours later.  When the cuffs were removed, Plaintiff was in extreme pain and requested medical attention immediately.  At 2:00 P.M., the inmates were returned to their cells from the recreational area, again with their hands cuffed behind their backs.  Plaintiff's individual cell was searched at 5:00 P.M., and Plaintiff was again cuffed behind his back despite informing CERT members of the pain he was experiencing.  At that time, Plaintiff again requested medical attention.  Around 7:00 P.M., Plaintiff was given his usual pain medication for his chronic back pain, and filled out a sick-call form to be seen by a doctor the next day.

Plaintiff was seen by a sick-call doctor on October 3, 2012.  He was prescribed pain medication for his shoulder and signed up for the physician line.  Plaintiff was next administered

x-rays on November 29, 2012, and received a temporary pass to be handcuffed in front of his body due to a possible tear in his rotator cuff.  Plaintiff was seen by a physician in his cell on December 4, 2012, but the physician merely inquired about his condition.

After numerous sick-calls for pain, limited mobility, and loss of strength in his shoulder, Plaintiff was assigned to physical therapy, but that treatment was terminated by the therapist after only three sessions because Plaintiff's injury was not responding.  Plaintiff was seen by Dr. Mohammad Golsorkhi on June 6, 2013, and was told to deal with his pain and that it would go away with meditation.  Dr. Golsorkhi refused to renew Plaintiff's pain medication prescription and placed him on Motrin instead.  Dr. Golsorkhi also gave Plaintiff an unlimited handcuff-in-front pass.

Plaintiff now alleges that he was subjected to excessive and unreasonable force with regard to the handcuffing he experienced, and also alleges that the medical attention he received was improper.

**II.     Claim for Excessive Force Pertaining to Plaintiff's Restraint During Cell Search**

Plaintiff's Complaint names the following prison officials as Defendants in this action: John Wetzel, Secretary of the State of Pennsylvania Department of Corrections; Mike Wenerowicz, Superintendent of SCI-Graterford; Jay Lane, Deputy Superintendent for Facilities Management at SCI-Graterford; George Ondrejka, Deputy Superintendent of Security at SCI-Graterford; Joseph Korsziak, Medical Department Supervisor at SCI-Graterford; and unnamed CERT Members employed by the Pennsylvania Department of Corrections.  These individuals are sued in both their official and individual capacities.

Defendants assert that Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment.  Sovereign immunity by way of the Eleventh Amendment

3

serves to bar suits by private parties against a state in federal court absent a waiver by the state or valid congressional override.  See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Pennsylvania has expressly withheld its consent to suit, 42 Pa. C.S. § 8521(b), and § 1983 does not override the Eleventh Amendment's sovereign immunity.  Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment further bars suit "against departments or agencies of the state having no existence apart from the state," as well as suits against a state official acting in his official capacity where retrospective relief, like damages, is being sought.  Laskaris v. Thornburgh, 661 F.2d 23, 25-26 (3d Cir. 1981).

As Defendants point out, the Department of Corrections is an executive department of the Commonwealth of Pennsylvania and cannot exist apart from the state.  71 P.S. § 732-102; see Lavia v. Commonwealth of Pennsylvania, et al., 224 F.3d 190, 195 (3d Cir. 2000).  The Department of Corrections and its officers in their official capacities are immune from lawsuits for damages unless an exception applies.  "In addition to Eleventh Amendment immunity, the Commonwealth defendants in their official capacities are not considered 'persons' amenable to suit for damages under § 1983." Mohamad v. Wenerowicz, No. 13-3702, 2014 WL 2957445, at *5 (E.D. Pa. July 1, 2014) (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 69–71 & n. 10 (1989)).

Wetzel, Wenerowicz, and Korsziak are officials within the Department of Corrections, and as such, may not be sued for damages in a § 1983 action.  Plaintiff is barred by sovereign immunity in seeking such damages against the state officials in their official capacities.  While Plaintiff seeks injunctive relief in the form of an MRI and treatment of his injuries, the only state official from whom injunctive relief is sought is Korsziak.  Korsziak's involvement in this matter

stems from the medical treatment that Plaintiff received, and will be analyzed along with the Medical Defendants below.

Sovereign immunity does not, however, bar a suit against state officials in their individual capacities for damages. Nevertheless, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

The inquiry in this matter is twofold: (1) did the actions of the C.E.R.T. Team on October 2, 2012 rise to a constitutional violation; and (2) were Wetzel and Wenerowicz personally involved? With regard to Wenerowicz, Plaintiff asserts that "Wenerowicz failed to act on the day in question and as a result allowed unnamed CERT Members to use excessive force on plaintiff Perez, causing injury when Perez was not violating any prison rules, nor was a threat to himself or others, and was not acting in any way disruptive." Complaint ¶ 45. This appears to be an excessive force claim based on the language of the Complaint, and does not deal with the medical treatment Plaintiff received from his injuries. The claim against Wetzel can be characterized in the same manner.

Under the Eighth Amendment, excessive physical force against a prisoner may constitute cruel and unusual punishment even where an inmate does not suffer serious injury. Hudson v. McMillian, 503 U.S. 1, 4 (1992). The core judicial inquiry is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7). Further,

> [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock. The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

Whitley v. Albers, 475 U.S. 312, 319 (1986).

According to the Complaint, Plaintiff and the other inmates were removed from their cells and flexcuffed outside with their hands behind their backs. Complaint at ¶¶ 16, 17. Plaintiff asserts that his injuries were caused by the positioning of the hands behind his back and the cuffs being too tight. Plaintiff also asserts that he made his pain known to the CERT members. However, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson, 503 U.S. at 6. Plaintiff's Complaint does not assert that the manner of cuffing and holding the prisoners throughout the duration of this search was wanton or deliberately motivated by a desire to cause pain or harm. Further, facts stated in the Complaint construed in the light most favorable to the Plaintiff do not lead to an inference that the object of the restraint was anything other than to maintain order while the cell searches proceeded. I am troubled by the conduct of the correctional personnel here. It seems unnecessary. However, I cannot say it rises to the level required to find an Eighth Amendment violation.

Since no constitutional claim exists with regard to the restraint during the cell search, the claims against Wetzel and Wenerowicz in their personal capacity for damages will be dismissed without reaching their personal involvement in the matter. Named Defendants Jay Lane and

George Ondrejka have not yet been served and have thus not moved for dismissal, but the same analysis would apply to those Defendants.

>   III.   Claim for Improper Medical Treatment

Plaintiff also brings claims against Wexford Healthcare Services, Dr. Mohammad Golsorkhi, and, as mentioned above, Joseph Korsziak for allegedly failing to provide him with proper medical care in light of the injuries he suffered while cuffed during the C.E.R.T. Team's cell search.  Under the Eighth Amendment, deliberate indifference to serious medical needs of prisoners will constitute the unnecessary and wanton infliction of pain.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Id. at 104-05.  However, "[m]ere medical malpractice cannot give rise to a violation of the Eighth Amendment," and it is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990) (citing Estelle, 429 U.S. at 106).

"[T]o establish an Eighth Amendment violation an inmate must allege both an objective element—that the deprivation was sufficiently serious—and a subjective element—that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference."  Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

> A medical need is "serious," in satisfaction of the second prong of the Estelle test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. For instance, Estelle makes clear that if "unnecessary and wanton infliction of pain," results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth

7

amendment. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious.

Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted). Under this standard, Plaintiff's injury is sufficiently serious as pleaded. Plaintiff asserts that, as a result of his shoulder injury, he is in constant and debilitating pain.

Since the injury is sufficiently serious, the Court must determine whether the Medical Defendants acted with deliberate indifference.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury," deliberate indifference is manifest. Similarly, where "knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care, the deliberate indifference standard has been met. Short of absolute denial, "if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that "result[ ] in interminable delays and outright denials of medical care to suffering inmates." Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for " 'an easier and less efficacious treatment' " of the inmate's condition. Nor may they condition provision of needed medical services on the inmate's ability or willingness to pay. Finally, deliberate indifference is demonstrated "[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment."

Monmouth Cnty. Corr. Institutional Inmates, 834 F.2d at 346-47 (citations omitted).

Plaintiff pleads that October 3, 2012—the day following the restraint that caused his injury—Plaintiff was seen by a doctor who prescribed him pain medication and signed him up for the physician line. Nonetheless, Plaintiff was not seen by a doctor again for his severe shoulder pain for almost two full months after being signed up for the physician line. Finally, on November 29, 2012, Plaintiff received x-rays and a pass to be handcuffed in front of his body. Plaintiff was informed he may have a torn rotator cuff. On December 4, 2012, Plaintiff was seen by a physician who inquired about his medical conditions, but who provided no further

8

treatment.  Plaintiff received numerous sick-calls due to extreme pain over the next several months, none of which entailed any palpation of Plaintiff's shoulder.  Plaintiff was eventually sent to physical therapy, but that treatment was discontinued after just three sessions.

On June 6, 2013, about eight months after Plaintiff suffered his injury, he was seen by Dr. Golsorkhi, who removed Plaintiff from his prescription pain medication and instead placed him on Motrin.  Golsorkhi allegedly told plaintiff to "just deal with the pain," and it would go away with meditation.  Golsorkhi also granted Plaintiff an unlimited handcuff-in-front pass.  On October 30, 2013, more than a full year after Plaintiff's injury, Plaintiff saw an orthopedic specialist via a televised visit.  As a result, Plaintiff was placed on a regime of cortisone shots and anti-inflammatory medicine.  However, Plaintiff asserts that he continues to suffer great pain and this treatment did not have any effect.

While portions of the Plaintiff's Complaint can be construed as disagreement with methods of treatment, the fact remains that, as pleaded, Plaintiff was forced to endure two full months of waiting before he was even given x-rays or examined by a physician, with only painkillers to tide him over.  This delay in treatment, if non-medical in nature, can constitute a plausible claim of deliberate indifference.  Additionally, deliberate indifference may exist where easier and less efficacious treatment is substituted.  Plaintiff asserts that he was denied an MRI and access to medical personnel with the necessary specialized knowledge to correctly diagnose his shoulder injury.  While this borders on disagreement with medical treatment, Plaintiff has sufficiently pleaded deliberate indifference at this stage in the litigation.

Plaintiff seeks injunctive relief against Wexford Healthcare Services, Korsziak, Dr. Golsorkhi, and John and Jane Doe Licensed Medical Practitioners.  Korsziak, a state official, is subject to federal suit seeking prospective relief—such as an injunction—under Ex Parte Young,

209 U.S. 123 (1908). See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 697 (3d Cir. 1996) ("[T]he state official, although formally acting in an official or representative capacity, may nevertheless be sued in federal court."). However, § 1983 claims cannot be premised on *respondeat superior* liability. Hampton v. Holmesburg Prison Officials, 546 F. 2d 1077, 1082 (3d Cir. 1976). Nonetheless, "[w]hen a superior personally directs his subordinates to do acts or when he has actual knowledge of their acts and acquiesces in them, he is regarded as having been personally involved and is liable for his own conduct, not on the basis of respondeat superior but because of his direct personal involvement." Bracey v. Grenoble, 494 F.2d 566, 569 (3d Cir. 1974). Plaintiff's complaint makes no assertion that Korsziak was aware of Plaintiff's injuries or the treatment being administered to him. See Farmer, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."). Plaintiff asserts only that Korsziak was "legally responsible for" the prison's medical department. Personal involvement is also required for damages. The claim against Korsziak will be dismissed.

Unlike Korsziak, Dr. Golsorkhi is not a state official, but rather is employed by Wexford Healthcare Services. In turn, Wexford Healthcare Services is a private company contracted to provide healthcare services to prisoners in the Pennsylvania Department of Corrections. In order to state a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). While neither Defendant asserted or briefed the issue, it appears that, under West, both Golsorkhi

and Wexford would be deemed to be state actors subject to suit under § 1983 as pleaded.  See id. at 54-56.

Unfortunately, the issue that arises with regard to Golsorkhi is that Plaintiff's potential constitutional claim stems from the delays in his treatment and possibly from the substitution of less effective means of treatment rather than from the individual treatment of any one particular doctor, based upon the facts alleged in the complaint.  While Plaintiff may have disagreed with Golsorkhi's treatment during his appointment, medical malpractice as a result of negligence is not a constitutional violation.  Estelle, 429 U.S. at 106.  "[P]hysicians' decisions not to perform particular tests or diagnostic measures on a prisoner will not support a § 1983 claim because these decisions are considered medical judgments that are non-actionable."  Thomas v. Zinkel, 155 F. Supp. 2d 408, 411 (E.D. Pa. 2001) (citing Estelle, 429 U.S. at 107; Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987)).  "The prisoner must show that treatment consisted of act[s] which were either intentionally injurious, callous, grossly negligent, shocking to the conscience, unconscionable, intolerable to the fundamental fairness or barbarous."  Id. at 411-412.  Plaintiff's potential injury results from his collective treatment, but given the facts alleged, it cannot be said that Dr. Golsorkhi provided treatment which violated Plaintiff's rights. The claim against Dr. Golsorkhi will be dismissed.

Wexford Healthcare Services is a state actor, but also a private company.  In this district, "[l]iability [for such private entities] under § 1983 cannot be based on vicarious liability." Donlan v. Ridge, 58 F. Supp. 2d 604, 611(E.D. Pa. 1999); see also Parent v. Roth, 2001 WL 1243563, at *3 (E.D. Pa. Oct. 17, 2001) ("This standard of liability—and not respondeat superior—is also properly applied to private subcontractors of the government, such as PHS."); Thomas v. Zinkel, 155 F. Supp. 2d 408, 411 (E.D. Pa. 2001).  In order to state a claim against

11

Wexford Healthcare Services, Plaintiff's claims "must be based upon a . . . policy, practice, or custom that caused the injury," rather than *respondeat superior*. Thomas, 155 F. Supp. 2d at 411. Plaintiff has not asserted that Wexford Healthcare Services has any such policy, practice, or custom in place that caused his injuries, and neither can one be inferred from the facts alleged. The claim against Wexford Healthcare Services will be dismissed.

While Plaintiff sufficiently pleads a claim for inadequate medical treatment under the Eighth Amendment, he does not properly plead such a claim against any of the Defendants he has named.

### IV.    Conclusion

Plaintiff's claims against Wetzel, Wenerowicz, Korsziak, Dr. Golsorkhi, and Wexford Health Services are dismissed without prejudice. Since no claims remain against any named Defendants, the action will be dismissed in its entirety. An appropriate order follows.


       /s/ Gerald Austin McHugh
United States District Court Judge